Thank you and may it please the court. The petitioner in this case was accused of a horrendous crime. But the question before the court is not whether he committed that crime or otherwise lacks good moral character. The question is whether the agency violated its own regulations and precedent or the Constitution itself in making that determination. And regardless of what the court may think of my client based on the existing record, the errors committed by the agency were to remand the case for new hearing or the minimum to return the case to the board to be reconsidered by a three-member panel. Before turning to the merits, I would like to address the government's jurisdictional arguments. It is actually an open question whether this court has jurisdiction to consider whether an applicant for cancellation of removal possessed good moral character. But we are not asking the court to review that determination. And even assuming the court lacks jurisdiction over that issue, it surely has jurisdiction over the precise claims, the specific claims that we have raised in this case. Under the INA, this court always has jurisdiction to review questions of law and constitutional claims. Whether an agency violated its own regulations and precedent is a question of law. And whether an agency violated the due process clause is by definition a constitutional claim. So the government's contention that none of our sufficiently colorable is really nothing more than a disagreement on the merits. Now, on the merits, the first issue we raised is that the IJ violated federal regulations by considering unauthenticated police reports. There is no dispute that the police reports were not authenticated, that a timely objection was made to the IJ, that the IJ admitted the reports, notwithstanding their lack of authentication, or that the board failed to cite or discuss the relevant regulation. The only argument the government makes in defending the consideration of the police reports is that we have not specifically claimed that they were fake or falsified in any way. But parties objecting to the admission of unauthenticated documents do not have to claim that they were false or fake or falsified. To the contrary, in matter of JR Velasquez, the board held that unauthenticated documents should not be admitted for no other reason than the fact that they were unauthenticated. Now, tellingly, the government does not rely on the reasons that the IJ provided for admitting the police reports. The IJ denied my client's objection because the records were not being submitted to establish a criminal conviction or a charge of removability. But the regulation at issue, 8 CFR 287.6, applies to official records that are submitted, quote, for any purpose, not just to establish a criminal charge, a charge of removability, or a criminal conviction. So there is simply no basis for this court to uphold the admission of the unauthenticated police reports. Now, even if it was proper for the IJ to admit the reports, he still violated the board's precedential decision in matter of Aragin by giving them full weight. As at least two circuits have recognized, the board held in matter of... What do you mean by full weight? The rule is that the IJ could not give them substantial weight or something, significant weight or something like that. You said full weight. I'm sure I meant substantial weight to credit, to give them... The immigration judge gave them substantial weight, full weight, gave them... You concede that the immigration judge was entitled to give them some, assuming they were properly admitted, was entitled to give them the report some weight? I suppose some, but not as much weight as he gave them under matter of Aragin would be our And how do we know when it's too much weight according to police reports that did not result in a conviction or are not otherwise corroborated? That is an excellent question and one the board itself has not provided much guidance on. But I think for purposes of this case, we can say that if you just look at this case on its own, the immigration judge gave it as much weight as he that is more than is permitted under a matter of Aragin. Mr. Watergate? Yes. Hypothetically, it's not this case. I'm counterfactual. If he had been charged and acquitted by jury, could it still be a basis for determining whether or not he's good moral courage? The board has actually held that it will not look behind an acquittal just as it will not look behind a conviction to determine a non-citizen's actual conduct. So under the board's precedent, an actual acquittal would preclude the board from, in effect, relitigating the criminal allegations. So a naked allegation is stronger than a full trial where you are acquitted. What if it was null pros? What is a null pros? No, what if the case was null pros? Oh, the charges were null pros in this case. What I mean in terms of there, could you consider it the allegations? Well, I don't think that the IJ has to completely close his eyes to them as you would in the case of an acquittal. Then wasn't it really the allegations were the basis for the finding of the lack of moral character? Yes, the allegations were basically the sole basis for the finding. And the witnesses that you wanted to put on, your client wanted to put on, would have confirmed that the allegation was made by the girl, correct? They would have testified, yes, that the allegation was originally made, but they also, particularly the sister-in-law, would have explained the chronology behind the recantation of the allegations. Well, they knew about that, that they accepted the report. They didn't hear the live testimony, but they took the report that the letters that were written and considered those, right? We have to assume that everything was considered in the record, that she made the allegation and that she recanted it and they say it didn't happen. All of that is in the mix. Your witnesses would have confirmed. This is a different case, seemed to me, if he had said, wait a minute, this girl never made the allegations against me. That's a different question. But you can see that the allegation was made, the allegation having been made, it is in the mix. There's an allegation, recanting, aunt, mom says didn't happen. That's in a mix to be decided whether or not it's moral character, isn't it? It's certainly those things that could be considered, but we're getting into the due process argument. And certainly live testimony is entitled to substantially more weight than written statements. I mean, it's notable that the immigration. What about you have an incompetent alleged victim? She can't speak for herself. She's incompetent to testify. And she, you know, she came to her mother who she loves and made these allegations. Now they say it didn't happen. Are we then they have to say, well, we'll throw that out now because these two people said it never happened. But the allegation was made by the girl. In your case, your witnesses would have said that that allegation was made, right? They would have. Yes, they would have said that the allegation was made. Don't you think that was a factor here that, like you said, live with testimony is stronger, but the little girl never had a voice. She couldn't have a voice because she was incompetent to testify. She was the alleged victim. Am I wrong? At the time she was too. There's no age limit on when children can testify in immigration court. At the time she was nine years old, and I think all parties would have frowned upon bringing her into court. She's now 12 years old. And I'm told that if the case is sent back for new trial, that she would be willing to testify in my client's favor. That's what I've been told. But with respect to the sister-in-law, the reason the IJ provided was that they did not, my client's former attorney did not provide a witness list. But we think that's actually protectful for a few reasons. First, the IJ was put on notice, this is on page 591 of the record, that the wife and sister-in-law were prepared to testify. More importantly, the government not only waived any objection to the absence of a witness list, but the government themselves wanted my client's wife and sister-in-law to testify so that he could cross-examine them. And then third, as I was saying, written statements, the written statements in this are very brief. They are written in, I think, what may be called broken English, and they really do not go into the allegations at all. So in terms of prejudice, if you compare the testimony that would have been put on in this case to the testimony that would have been put on in a Temkang, we think the test in a Temkang is simply whether the testimony would have added something probative that was otherwise missing from the record. And here the sister-in-law's testimony. I'm sorry to follow up on the Chief's questions. But as I understand your position, it's not just that the allegations were made. I mean, the IJ ultimately has to make a determination in assessing good moral character, whether there is some truth to the allegations, right? And the whole basis of submitting the report was to corroborate the substance of the allegations. And the report included not just the narrative of the investigators who talked to the victim in this case, but also, as I recall, a telephone conversation in which the petitioner allegedly made admissions that, you know, obviously didn't cast them in the best light. Isn't that the problem here, that there's just much more than a mere allegation? The report just kind of puts it all together and ties a neat little bow for the IJ to consider. And the problem with that, as you pointed out, is that that report never should have come in to begin with. That's completely right, Your Honor. And we think not only should the report not have come in, but if the court finds that it was correctly admitted, that makes it all the more important that my client's witnesses have been given an opportunity to testify. This case was the equivalent of a criminal trial in which the prosecution is allowed to put on its case, but the defense is not allowed to put on its case. Considerably, my client was admitted, was allowed to testify himself, but his corroborating witnesses were not allowed to testify. Well, because they weren't on a witness list in the first place. They weren't. But as I said, the government waived its objection to that. And even if they were on a witness list, it's clear that the IJ would not allow them to testify in any event. And we know this because he set 4.30, 4.30 p.m. as a hard cutoff time. And my client finished testifying at 4.20 p.m. So we think even if a witness list had been submitted, the IJ made clear that he would not have allowed any further witness testimony. I don't understand. Didn't he have three hours? Was it three hours? There were three hours total, Your Honor. He said three hours. So I don't know exactly when the hearing started. What took so long to put on these star witnesses? I think the reason, Your Honor, is because my client testified through a translator. And that just takes twice as long because all answers have to be translated. Questions have to be translated from English to Spanish and answers vice versa. It's interesting because I used to be a defense lawyer. I did a lot of criminal defense work. You normally put your client on last because you don't know what you're supporting people are going to say. And so you always put them on first. So you waited two and a half hours before you tried to even put them on. And they were on. These two, these people were like linchpin witnesses. It didn't matter about him to me. I would put him on based on this case, like five minutes. What's your name? Are you a nice person? Yes. Oh, blah, blah, blah. But you want, I just don't understand why these people work. Proffitt said, Judge, we start this thing. Ready to go. Here are two witnesses. Boom. Why was it almost at the end? The judge was saying, well, sure, I've got this thing off here. I know that. I know that rubs any defense lawyer to do that. But can you tell me what was these people were so important? Why were they put on? In immigration court, your honor, it is customary for the respondent to testify first when they're when they're seeking relief from removal. That's simply a matter of custom. I think it's in part because it is the respondents burden and the IJ has to make a credibility determination where they believe their own testimony and whatnot. But certainly from a strategic standpoint, it may have made more sense to call the other witnesses first. I will. I will grant you that. I would note that there was another argument I would like to touch on before rebuttal. And this is the final argument to be raised and one that would actually allow the court to avoid reaching all of the other issues in this case. And that is under the board's own regulation. A single member should only decide a case that is capable of being resolved by a brief order and should instead refer to a three member panel. Any case that involves a quote, complex, novel, unusual, recurring issue of law or fact. Now, the board's decision in this case was not brief and the issues are indisputably complex, novel and unusual. Now, the government's primary argument is that we have no right to challenge the board's because the regulations do not require any case to be referred to a three member panel. But this court rejected that proposition in Contreras-Mendoza, where it noted that the regulations suggest that if a case does meet the standard for adjudication by a three member panel, a single member shall not decide it. And the government's argument to its logical conclusion, the court could never find that the board should have referred a case to a three member panel, which would conflict with Contreras-Mendoza. And we also think returning the case for further consideration by a three member panel would allow the board to issue a more comprehensive decision. The board's prior decision did not cite or discuss the authentication regulation. It did not cite or discuss matter of error gain. And it didn't mention the fact that DHS affirmatively requested that my client's wife and sister-in-law be allowed to testify. So at a minimum, remaining the case for further consideration will allow the board to issue a more developed decision. Thank you. Mr. Monaghan. Mr. Ramnitz. Mr. Ramnitz. Yes. May it please the court, your honors, Tim Ramnitz on behalf of the United States Attorney General. In this immigration case, Petitioner challenges the agency's discretionary determination that he lacked good moral character for purposes of cancellation and removal based on allegations made in the investigative report, reporting that essentially he was alleged to have committed sexual abuse to a minor. Petitioner, at the top of his argument, did not challenge that discretionary bar to review at 1232A2BI applies to good moral character determinations. He noted the court, it's an open question, it's only addressed to unpublished decisions, but he said he's not really challenging that the bar applies. But he's arguing that the court has a jurisdiction to consider that as a question of law, the agency afforded to the allegations in the police report. As this court explained in Sorcia, which is a 2011 case, which both parties cite, when someone challenges the weight afforded to factors in discretionary relief, they're not alleging a question of law. They're simply disagreeing with how persuasive the immigration judge found the evidence. Counsel, you kind of skipped over the threshold question, which is you don't get to the weight of the evidence if the evidence never should have been admitted in the first place. And that clearly is a question of law. So, I mean, the board didn't even cite the regulation. The judge in this case didn't pay any attention to the regulation. It seems pretty clear that on the face of the regulation, there's no exception that would have allowed this evidence to be admitted once a proper objection or authentication was made. I don't believe there's a question of law here, not a meritorious one. I do believe the immigration judge considered that regulation. And in the immigration judge's opinion, he talks about the authentication regulation that Petitioner argued to have 7.6 and states that it doesn't cite matter J.R. Vazquez, but Petitioner does and the government does. This is a decision that really explains why that regulation is not applicable. That regulation needs rote adherence to when you're trying to prove a criminal conviction. Matter J.R. Vazquez, which Petitioner really hammers on, says twice in two different footnotes, this regulation does not apply in a discretionary relief context when we're looking at conduct and not conviction. So it's really a red herring that Petitioner presents. This regulation, that's why the immigration judge so quickly disregarded it, does not apply to conduct discretionary relief. J.R. Vazquez walks through how Congress made this really applicable to establishing convictions and the purpose of removability when you have to, as the court is probably really familiar with, the categorical approach and establishing the fact of a conviction. So correct me if I'm wrong and I don't have the case in front of me, but wasn't matter of ad hoc also a matter of discretionary relief and the board there indicated that the use of unauthenticated evidence was improper there? Not unauthenticated. The board said uncorroborated in that case. So we're getting past this authentication issue, which I think is a good thing. That's why the immigration judge quickly dismissed it. It's just simply not applicable. And I also note, just the last thing I have to say on authentication, unless the court has further questions, is that under Gannis, this is a 2015 decision from this court, and I can provide the court a citation. It specifically said these regulations under H.C. FAR 287 do not create enforceable rights. These are simply internal guidance. So not only does authentication regulation not apply here, it doesn't give any enforceable rights for Petitioner. This is just simply an internal. I mean, I hate to say this, but you seem to be saying that it's not worth the paper it was written on. I mean, first of all, the regulations doesn't, it doesn't make the exception that you talk about, doesn't make the distinction between discretionary relief and other forms of relief and the merits of a conviction to begin with. But it can't be that it has no meaning whatsoever. And surely, if it has some meaning, that a Petitioner can, in fact, exercise an objection when it's appropriate. You're just taking, you're taking issue with the scope of the relief that's awarded under the regulation, or that might be available under the regulation. Well, what I'm arguing is that this is a regulation that the agency passed, and it's a regulation the agency has interpreted. And MatterJR has said that this doesn't apply in this context. And that's what the agency has said for a long time. The Petitioner really elides past that when he ever talks about MatterJR and Esquez that it specifically said, we're not applying this regulation to come to conduct. So we passed this regulation. This is how it applies. That's what the agency has said. And when you look at the decisions that both the parties cited interpreting this regulation, they've always made note of the fact that under the federal rules of evidence in this regulation, it doesn't provide the exclusive means of authenticating a document. The courts have said over and over again, this is not an immigration proceedings, the Whatever tends to show a document is what it purports to be, authenticates the document. And that's why I described this argument as a red herring, because the Petitioner never argues this is not what it purports to be. And even in the Petitioner's testimony, he said these allegations happen. Okay. Well, there you're kind of flipping the burden, right? You're saying that because the Petitioner didn't indicate or prove that it wasn't what it was purported to be, then his claim fails, but it's the government's burden in this case to show that the document is what it purports to be, isn't it? We have to show, to admit a document, this is a part of the regulation, to admit any evidence that both parties ever wants to offer it for admission, has to show it's probative and that its use is fundamentally fair. That's what the government has to show. Certainly no debate this document is probative, it has good moral character. Second, is it fundamentally fair to admit this document? It certainly was in this case, because the Petitioner had an opportunity to fully confront this document. That's what the government's burden is in these cases, when it comes to admission of a document. I'm trying to raise this regulation, which is simply not applicable. I'm sorry, it's nothing, it is a red herring. Nothing that a court has said is specifically applicable in this context. And the board has stated that actually the opposite is not applicable in this context. Okay, so assuming it was appropriately admitted, the report, it appears that the I.J. not only gave it substantial weight, but sole weight. What other evidence did the I.J. consider in determining the lack of good moral character here? This was a determinative factor in good moral character. The allegations, this investigative report, that's why the immigration judge found Petitioner lacked good moral character. So then how does that not violate the precedent that it should not be given substantial weight? It does not violate that precedent, because if you look at Matter of Arrogance and the other two decisions Petitioner cites from the Sixth and Seventh Circuit, Avila and Seventh, and McKellie-Toloso in the Sixth, what's most important and what the courts emphasize is Petitioner's testimony where he asserts no wrongdoing was afforded full weight as well. They credibly testified in each of those cases to no wrongdoing. And so that's why the board declared it was error in Matter of Arrogance, because you had... But in those other cases, there was other cooperating testimony, wasn't there? One from a social worker, and I can't remember which case, but... Yes, and that was the Sixth Circuit case. The immigration judge reported to the social worker, and the social worker said, I agree with Petitioner of his claim of no wrongdoing. And that's why the immigration judge found it was a credible claim of innocence. And that, when you have a credible claim of innocence and allegations, we just have a police report, then the court has said that might be error, because why would you just choose one over the other, not really explaining why? And that's not what happened in this case. The immigration judge heard Petitioner's testimony and found it not persuasive, and for very good reason. Petitioner had implausibly claimed that he was never alone with this little girl who made these allegations. And even though he said at the same time he spent every weekend with her and her family, they went on trips together, he said he was never alone with her. And then when it came to refuting events described in this investigative report, he simply kept falling back and saying, I don't remember. I don't know. I don't remember. The immigration judge looked at that and found that not very persuasive in comparison to this investigative report, which I would note is not simply an arrest report, as we see a lot in immigration proceedings, where the report details how police picked this person up and then he was charged. This is a detailed investigative report that's internally corroborating. Okay, so fill in the blank, I guess, for me. Um, the precedent says the IJ cannot give substantial weight to a police report where it didn't result in a conviction. Here you say the IJ gave sole weight to this police report, or at least Petitioner says, and I thought I heard you agree. So why, again, does that not run afoul of precedent? Because of all those precedents, Petitioner had a credible claim of innocence. It was found to be credible that in all those cases, and the Seventh Circuit case specifically highlights this fact that his testimony claiming innocence was found fully credible by the agency. That's not what happened here. You have basically what the agency found is that we have a police report, an investigative report on one side, and really nothing on the other, because your testimony claiming innocence was not very persuasive. In all these other cases, the testimony was afforded full weight. And as you noted, in the Sixth Circuit case, there was also a social worker who said, I also agree his testimony claiming innocence is worthy of full weight. And we just, that's not what happened here. If you have a very thorough investigative report, the Petitioner simply could not explain. And that is why, in this circumstances of this case, it doesn't run afoul of any of those precedents, because it's just different. Can I go back, Mr. Counsel, to your argument about authentication? And I hate to beat a dead horse, but you cited to Enrique Velasquez, I didn't have the case in front of me when you were reciting it. But even in that case, as I read it, the BIA is not suggesting that some form of authentication isn't required. It's simply saying that the precise methods of authentication described in the statute and the regulations aren't mandatory or exclusive. But there has to be some form of authentication of the document. And the regulation on space doesn't make any distinction between its use for, to prove a conviction or to afford or deny discretionary relief. It just says, if an evidence is used for any purpose, it has to be authenticated in some way. And you still haven't told me what the government did in this case to authenticate this evidence. Well, what the government did was present this evidence, and Tishner has never claimed it's inauthentic. That's again, inverting the, I mean, that's inverting the burden. I mean, that doesn't make any sense. What I'm trying to say or explain is that this document was submitted, and what Tishner is arguing for is rote adherence to this authentication regulation. Well, you know, sometimes rote adherence is important. Process is important. The whole purpose of this procedure is at least to adhere to some minimal standards of due process. And you call it rote, but I think it's much more than that. And it wouldn't have taken much in this case for the government to bring in somebody, an officer, somebody, a certification by the state agency to authenticate the document. But there was no, there was nothing done here. Well, perhaps that would not have been a large burden on the agency, but there was really no reason to, because as Petitioner admits, he's not claiming this document is not what it purports to be. He doesn't say anything in this document was unreliable. He simply wants strict adherence to this regulation. And as we just read in the matter of J.R. Vazquez, strict adherence to this regulation is not required. All that's required if someone challenges authentication is that its document is what it purports to be. Petitioner's not challenging that it's actually inauthentic. He's just challenging the regulation wasn't followed. And the regulation is not required to be followed in this case. It's just the government has to submit probative, fundamentally fair evidence. It's not fundamentally unfair to submit this, but Petitioner actually doesn't claim it's inauthentic. And Petitioner's 1022. So is there a subtext in your argument there that because the Petitioner is not claiming that it's not what it purports to be, Petitioner is not prejudiced by admission of this police report? Yes. And I'm saying that all these arguments about adherence to regulation, it's non-error and it's not prejudice. It simply has no application in this case. Petitioner doesn't challenge that these allegations didn't happen even, as the panel has noted. He says the allegations happened exactly as reported in the report. He just simply says the whole time this little girl was lying. So he really wants just strict adherence to regulation. It's inapplicable. Meanwhile, saying, but yes, I admit that everything is fine about this document. It happened. It's authentic. That's why his argument just collapses, because there's no need for adherence to that regulation. The board has said so. Okay. So, and I think, Judge, I think you were responding to Judge Thacker's arguments while I was looking something up about the weight that was given to the document. So why isn't the fact that, I mean, this was it. It was a report. And that's essentially all that the IJ relied on to give it this positive weight. Why isn't that inconsistent with the board's precedence? It's not inconsistent with the board's precedence, because in those precedents, there was full weight according to Petitioner's claim of innocence. Petitioner was found to credibly say, a matter of argument, he was found to credibly say in the Sixth Circuit decision and the Seventh Circuit decision that I'm innocent. In fact, as the panel pointed out in the Sixth Circuit decision, a four-appointed social worker, an independent person agreed with the petitioner saying, I believe he's innocent. That's what the difference is. In this claim, the immigration judge weighed this testimony, claiming innocence, and found it really, it wasn't credible. It wasn't persuasive, because Petitioner- Well, and he weighed it, by the way, he weighed it in the context of a proceeding in which that was it. It was a paper record. The witnesses who were apparently available to testify weren't allowed to testify because of some slavish adherence to a deadline, a time deadline. I don't believe it's slavish adherence. I mean, this is a docket management tool. Petitioner, if he really thought these witnesses were so significant to his case, surely would have gotten them together earlier and presented this witness list to the immigration judge. The immigration judge provided three hours for this hearing. Well, there was no objection to the, on the basis of the witnesses. And frankly, if I recall, the government wanted the witnesses to testify, I guess, in part because they thought that they'd be able to poke holes in the story of the witnesses. Isn't that right? That's correct. And DHS's closing statement said, we'd be more than happy to cross-examine the victim's, alleged victim's mother in this case, based on her letter where she describes being confused about things. They wanted an explanation on that if they were happy to do that. However, it's still within immigration judge discretion, as any judge's discretion, to manage their docket appropriately. And the immigration judge said, I provide you three hours, and the last minute you stick me with two more witnesses, that just can't be done here. Maybe there's a good time, but that's really not something that I have to allow you to do. As with an immigration judge's discretion, it was within the rules, as the immigration court practiced manual states, you have to submit a witness list for the very purpose that you have to know how long the hearing is going to be. And so, really wanted to present these witnesses. I mean, maybe it's a claim of ineffective assistance of counsel at best, that this attorney didn't get these witnesses together if they were so significant to their case. But it's not any error on the immigration judge. Thank you. Unless the panel has any further questions about this case, the government will see the rest of its time. Thank you, Mr. Remnitz. Yes. Thank you, your honors. Just very quickly on jurisdiction. To be clear, we do dispute that the jurisdictional bar in 1252 A2B1 applies to the good moral character determination, but we simply haven't raised that issue because it's not before the court. We're not asking the court to review the overall determination. And in any event, there is a case currently pending before the Supreme Court, Patel, which was argued in December. We discussed it in footnote one of our reply brief. And based on the argument, it seems as though the court is poised to agree with our interpretation of 1252 A2B1. But again, that's not before the court. With respect to authentication, I would first point out that the board did not rely on any of the arguments that the government is now making. The board did not even cite the regulation question. So we think this is simply all a post hoc rationalization that this court cannot consider under the Chenery Doctrine. But in any event, the text of 287.6, as Judge Diaz noted, admits of no exceptions. It refers to official records when admissible for any purpose. Likewise, matter of J.R. Velasquez does not say what the government claims it says. On page 684, the holding is, we conclude that the disposition notice proffered by DHS as proof of the respondent's conviction is not admissible into evidence because it is not authenticated at all. Here as well, the police reports were not authenticated at all. Now with respect, yes. How would they be authenticated in this case? How? Oh, with a seal from the agency or simply a letter or email establishing chain of custody, something like that. So somebody just stamped it. That would have been it, right? Yes, I mean, that's how conviction records are authenticated and certified. It's from a stamp bearing the seal of the clerk. Now here it's from the police department. Because that's when there are predicate offenses that are required as elements with their charge, with those things like that. But here, this is a discretionary relief. And the question is whether or not there's moral character. The thing is that the witnesses that you brought that would testify, didn't those, aren't they the same witness who brought this charge? I mean, who made these complaints? The little girl didn't find her way alone, did she? Didn't they? Aren't they the ones who, or somebody, right? Yes, my client's sister-in-law was the one who contacted the police, but she did so believing that her daughter was telling the truth. Once her daughter admitted that she was lying, she then called the police to recant. Basically, her and her daughter appeared before the police and the prosecutors to say that we wish to withdraw the charges because the allegations did not in fact, the allegations were made, but the conduct in question did not in fact happen. That witness could have been called, right? The police. They've gotten a statement from the police who heard her say it's not true. Actually, my client asked to cross-examine the police, but the government said, again, this trial happened in the middle of COVID, that it was simply too difficult to bring the arresting officer into court to testify. That's fine. Postpone it. Postpone it. Yeah, the immigration judge made clear that he was not continuing the proceedings. He makes that absolutely clear that he was going to issue a decision that day. For all intents and purposes, any request for continuance would have been denied. For discretionary relief, in this situation here, even if, for example, even if she later said, what the girl said, I didn't tell the truth, I was lying. That's what you report. They would have said that she said, right? Not only that, but the sister-in-law would have testified that she fabricated the entire account of the initial confrontation at my client's home. So if she had been called to testify, she would have said, when my daughter told us, we did not in fact go over to my client's home to confront him. She would have testified that she made that up in an effort simply because she was so mad at him based on what her daughter told her. So it's not simply a matter of her confirming that the girl now retracts. It's that she herself embellished, the sister-in-law herself embellished the allegations. That is what she would have testified, had she been allowed to testify. And to address your larger question, I mean, the good moral character determination, it's a balancing test, if you will. And our ultimate argument is that the government allowed, pardon me, the IJ allowed the government to put evidence on its side of the scale that should not have been admitted and prevented my client from putting evidence on its side of the scale that should have been allowed to come in. Can this court order the government to find good moral character? Again, that is an open question. Whether good moral character is something that this court has jurisdiction to consider, that's an open question. For example, this court has held that whether an applicant for cancellation has established exceptional and extremely unusual hardship is a mixed question of fact and law over which it does have jurisdiction. So by that, that's the Galvan case, G-A-L-V-A-N. By that token, we would also argue that good moral character is a mixed question of fact and law, which this court would have jurisdiction to review. But again, because the scales in this case included evidence that should have been admitted and did not include evidence that should have come in, the court is simply not in a position to make that determination. What about voluntary removal? Voluntary departure? So voluntary departure has both statutory eligibility requirements and a discretionary component. Good moral character, at least for post-conclusion voluntary departure, is an element, is a statutory element. And we would argue in that context as well that it is a mixed question of fact and law. But voluntary departure, like cancellation of removal, are discretionary forms of relief. So at the very end, even when a non-citizen has satisfied the eligibility requirements, the I.J. must make an ultimate discretionary determination. And I would note in this case, the I.J. did not make that determination. If you look at the last paragraph of the I.J.'s decision, this is on page 75 of the record, he specifically declined to determine whether my client would merit a favorable exercise of discretion because he did not satisfy the statutory requirement of possessing good moral character. The court has no further questions. Thank you. Thank you so much. Thank you both, counsel, for your able arguments. We can't come down and greet you. We certainly can't do that for the government. But nonetheless, we appreciate your arguments and wish you well. Be safe.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker